Good morning. Good morning. May it please the Court, I would like to reserve about two or three minutes at the end. We'll try to do that. My name is David Gingras, appearing on behalf of Appellant Eccentric Ventures, LLC. And this is sort of a big, messy case, and I apologize for that. But in preparing for today, I really did my best to try to boil down our position to really just a nutshell. And that nutshell basically is this. A party cannot bring a lawsuit based on facts that they know are untrue. We'll call that version A of their claim. They cannot bring version A of their claim based on materially false statements of fact or damages that they know are completely unsupportable and then escape liability by switching to version B after they're caught. Suppose they know some facts, they discover some facts are not true, but other facts are true. Right. I came up with this example, which I hope is clear, and if it's not, we'll talk about it. Imagine a breach of contract action that's subject to the statute of frauds, and the issue is did the defendant sign the contract and was it in writing. If you have undisputed evidence showing that the defendant signed the contract and it was in writing on Monday and then the plaintiff lies and says, well, not only did he sign it on Monday, he also signed it Tuesday, Wednesday, Thursday, those additional false statements really don't impact the case at all. I would just suggest they're not material to the underlying case. So in that situation, when you lie about the signing of the contract on Tuesday, Wednesday, and Thursday, that doesn't destroy probable cause to sue because the undisputed evidence showed that it was signed on Monday. But let's go back to your case, and let me try to use your analogy in your case. And I'm not sure it's been established that this was a total lie. In other words, their position to the other side is that, well, maybe it wasn't in the conversation, it was in e-mails. But let's assume that's a lie. But they have other instances that would support, that would provide probable cause for their claim. Now, I know you contend they don't, but let's just assume that. They allege five or six things. There are five or six instances. One of them they allege occurs, hasn't occurred. But the other three or four would provide probable cause for the claim. Under that circumstance, would you have a cause of action for malicious prosecution? I think what you're describing is pretty close to my example where there's a lie about, let's say, the Monday. It wasn't signed on Monday, but it was signed some other day. I fully agree that if you lie about something that doesn't make a material difference to the case, it may be a material fact in the case. It may make a material difference. But the district judge said even putting that aside, there was sufficient probable cause to bring this complaint. And so my question is, is the judge wrong in that determination? What Your Honor is referring to is the second ruling from June when the Court granted summary judgment in favor of the Mowbray parties. What we are talking about or what we think the Court got right the first time was the March 20th ruling. Well, yeah. It said there's not enough here. It's specific. Well, to kind of focus the Court, the issue is that the California extortion claim that was originally brought was predicated on the idea that there were these phone calls and that there were things said during those phone calls. There was money demanded. There were threats made. Mr. Mowbray put in a detailed affidavit explaining what happened. Right. That was the factual. And in the Court's March order where it denied his anti-slap motion and found that we had established a probability of success, the Court said the California extortion claim originally relied primarily on those phone calls. Okay? And then in June, the Court switched its view and said, well, you know, there was also an e-mail. So even if it's the same thing. Right. So my question is, and you've done the procedural history better than my thumbnail, when the Court made that second ruling and said there's other stuff that supports this complaint, why was it wrong? For two reasons. Number one, because it's not the correct test. The correct test is the claim that was originally filed, did that claim have probable cause? If not, and I'll quote from the Franklin Mint case, which is cited on page 33 of our opening brief. An unsuccessful plaintiff cannot shield himself from a malicious prosecution action by arguing that even if the only theory advanced in the complaint at trial was groundless and maliciously asserted, he nonetheless possessed some other undisclosed and unlitigated but tenable theory. Well, and I've read that case. And here's my problem with it. And I need you to try to respond to it. These other theories are not undisclosed. They are made in conjunction with this case. In other words, they're not made for the first time in the malicious prosecution action, as I understand it. They're made for the — they're made in the underlying complaint, are they not? No. That theory was not in the underlying complaint. The original complaint was I was extorted on the phone. Then we caught him lying. We showed that that wasn't the case. And he says, okay, well, I wasn't extorted on the phone, but I was extorted in emails. And that gets to my second point. So my first point is I think we have a claim against them for initially bringing a theory that they knew was factually untrue. Then they switched to theory B. Let's talk about that for a second. Theory B is that there was an email that my client sent, which I have a — it's a — Right. It's half 17. It's ER543. It's a six-page email. And at the end of the six-page email, there is a very brief reference to something called the Corporate Advocacy Program. And the Mowbray Party's claim was, well, this program involves money for removal of content, which is not factually true, but that's what their theory was. So they say, well, we got this one email here from a ripoff report, and we felt extorted by it. And therefore, we had probable cause to bring not only our extortion claim, but all of the other claims, including wire fraud, conspiracy, three different tortious interference claims, inducing breach of contract, deceit, fraud. The list goes on and on. By the way, your malicious prosecution claim focuses on the extortion claim, does it not? The way the initial complaint was set up, we talked clearly mostly about the extortion claim. And then we had sort of a generic allegation that all the other claims I just read off. Right. But just that generic allegation. Right. And I will concede that the initial factual support for why the other claims didn't have probable cause was probably less specific than it should have been. Well, there is no support. Well, okay. Fair enough. But then we get to our second amended complaint where all those details are filled in. The Court just never allowed us to file it, simply because a deadline had expired before Ms. Borodkin filed her first 12b-6. Right? If we focus only on your first amended complaint, the one to the complaint before the one you were not allowed to file, do you agree with me that it doesn't really challenge any of the claims except the extortion claim?  No, I don't agree. And here's why. Because multiple claims, in addition to the extortion claims, such as the California Business and Professions Code 17200 claim, the RICO wire fraud claim, those claims require proof of actual loss. And we alleged in our complaint that the Mowbray parties had no actual loss because their company was a sham. It had 9 years of operations and zero revenue. Zero. And beyond just that, and in a 12b-6 context, I think the inference is required to be drawn in our favor that that allegation shows they were not damaged. So any claim that they were not damaged. Were there sufficient allegations of malicious prosecution with respect to anything but the judge lets you get past a motion to dismiss on the extortion claim, but were there any real allegations with respect to any of the other ones except this sort of waste bucket? And by the way, everything else was done with malicious intent, too? I think there were. Because any claim that required proof of actual loss, our complaint alleges that there was no actual loss. But did you allege malice and lack of probable cause with respect to the others? Sure. Not only did we allege malice, Ms. Baradkin filed two separate motions for more definite statement arguing that the complaint was inadequate with respect to malice. The Court actually agreed with her initially and then required us to amend. That was the only amendment that happened. And I then amended the complaint. That was the first amended complaint. And the Court – and she then filed a second motion for more definite statement saying that malice was still inadequately pleaded, and the Court denied her motion in its entirety, finding specifically that the malice allegations were sufficient. So there's no issue with malice. The only reason the case was dismissed was lack of probable cause. And my point is that I think we established in the complaint, again, that early on at a 12b6 standard is very deferential to the plaintiff. The Court was required to draw inferences in our favor, and the judge specifically said that he wasn't doing that, that he was giving Ms. Baradkin the benefit of the doubt and assuming that, well, just because the company had new revenue, there might be a set of hypothetical facts that would allow a company like that to show actual loss. And I agree that there could be hypothetical facts, but that doesn't mean that was the case here. Roberts. I just – you have to help me. Wasn't that part of the complaint dismissed on a motion to dismiss? Okay. So the extortion – the extortion one survived and went to summary judgment. But the part of the complaint that related to the other non-extortion RICO claims, wasn't that dismissed on the motion to dismiss? With respect to Ms. Baradkin, every – we only had one claim. Well, we had two claims. There was malicious prosecution. Okay, no, but just answer my question. Yeah. Weren't those the subject of the judge's 12b6 ruling? Yes, the 12b6. And those – and with respect to the non-extortion claims, the judge said you haven't made any allegation of probable cause, right? I don't think – I think that's putting a little different spin on – I don't read the ruling that way. I think he said that there were some allegations such as the lack of damage to the plaintiffs, the Mowbray parties. He just said, well, there could be a circumstance where a company with zero revenue could still prove actual loss. Therefore, I'm giving Ms. Baradkin the benefit of the doubt. Right. Because we're on a 12 – we're on a 12b6. Right. And it's possible that they could prove actual loss. No. Right? No, no, no. I think – I think that's turning the correct standard on their part. No, because we're looking at the previous complaint. We're looking at the complaint that they filed that you're complaining about. Right. And we're alleging that at no time did they have actual loss, period. And we – we allege that the lack of – All right. But did you allege lack of probable cause with respect to the non-extortion claims? I believe we did. If it was less than clear, the result there should be leave to amend. But I do – I do believe the First Amendment complaint, which was the last one that was filed, clearly alleged lack of actual harm, and – and that would have been fatal to the RICO extortion claim. It would have been fatal to the RICO wire fraud claim. It would have been fatal to any claim that required proof of actual damage, of which there were several. Did they fire – Counsel, Judge Gould – – the mitigation – let's hear from Judge Gould. Go ahead, Judge Gould. I just wanted to interject one question on this point you've been advocating. On the non-extortion claims, assuming that there are no damages that could be proved on those, could the court in California award nominal damages? I don't believe so. I think the California Business and Professions Code claim is very specific, that not only do you have to have actual loss, there has to be loss to your business or property. I don't think you can award nominal damages in that context. Is there any precedent that says the California court cannot award nominal damages if someone fails to prove damages? I believe that there – Go ahead. I'm sorry. I believe that there is. I don't have it at the top of my mind, except – except to say that both of the claims have not only required proof of actual damage, but proximate cause, which is another issue that I think we allege sufficiently, that – that the extortion that was alleged to occurred – to have occurred caused no damage at all, that they had no basis for alleging that this program that they never joined and never paid any money for somehow harmed them. I have – I have a recollection that they hired somebody to try to mitigate the damage done. And that would be damage caused by the defamatory statements that they claim some other party posted. But that wasn't my client's doing. Well, I mean, why – why couldn't that be part of their RICO damage? Because that damage – first of all, the – the posts on ripoff report were done months and months before this conversation where they alleged this extortion occurred. There's no causal connection whatsoever between any loss to their business. And again, their business, they admitted, never functioned. They never tried to sell a single product or service ever in nine years. Never even attempted to sell anything. So I don't know how they would have had probable cause to allege actual loss given those facts, which Ms. Borodkin knew because she was sitting in the deposition where her client testified about that. You can slow down a little. Yeah. You're down to about two and a half minutes. Yeah. Did you want to save some for rebuttal? I think I – unless you have any other questions, I think I'll reserve. Thank you. Thank you. Okay. Who's up? Who's up first? Good morning. Good morning. I'm David Meyer on behalf of Dr. Linares. Excuse me, Dr. Movers and Ms. Linares. I'm going to speak for about seven minutes and then cede the rest of my time to counsel on this consolidated case. I respectfully ask this Court to affirm the trial court's grant of summary judgment. And I'd like to make some brief opening remarks before responding to counsel's arguments. Here is why the Court should affirm the trial court's decision. First, the appellants cannot show a triable issue of material fact. We need to keep that standard in mind. Second, probable cause is an extremely low standard. Stangster instructs there are really only two ways to show it. Either a litigant relies on facts that she doesn't believe to be true or an untenable legal theory. Okay. So you got – you brought a lawsuit in California that got dismissed. Yes, Your Honor. And the plaintiff didn't have enough facts to get the case past summary judgment. Correct. Among the facts you relied on in filing the complaint was a phone conversation that everybody now admits didn't occur, at least didn't occur the way it was alleged. That was – that allegation was in the complaint, Your Honor. Right. It was in the complaint. Along with numerous other allegations. All right. And so you bring a suit based on an allegation that there was a phone conversation in which your clients were extorted. It turns out there was no such – there was no phone conversation in which your clients were extorted. Why doesn't that establish lack of probable cause? Because our theory, as the trial court noted, swept much more broadly. On ER-333 is the original complaint. And in that complaint, as the trial court noted, it says the defendant's program, the defendant's program, referring to the cap, is the source – is the mechanism for attempted extortion. So I would say it would be not factually correct to say that we only relied – small slice of allegations. Okay. But when you get to summary judgment stage in the California case. Yes. The district judge says you don't have enough facts to show that their attempted program is extortion. Well, I'm dismissing your claim. So why – why did you have – let's walk backwards then. We know your claim fails. That's one of the first prerequisites of a malicious prosecution claim. Right. How did you have – tell me why you had probable cause to bring the extortion claim. Because the trial court – well, there's two reasons, right? The factual kind of probable cause and the legal probable cause. Well, but we know the facts – I don't – there's two separate issues. We know the facts don't support your claim because the district judge dismisses them. They don't support the claim. Correct, Your Honor. They may be sufficient to survive a motion to dismiss, but they don't support your claim. So tell me why your investigation of the underlying facts was sufficient to establish probable cause. Because the defendant's program, the CAP program, the trial court found, is sufficient enough to establish that – that eccentric's actions look like attempted extortion. And again, remember, the probable cause standard is very low. So we don't need this overwhelming evidence of, oh, we can name this fact and this fact and this fact, and all of these facts have to be, you know, positively 100% true. So the CAP program of itself in the way that it charges people money in order to make these negative things go away, you know, quote, unquote, turn the negative into a positive, is – is – supported the underlying facts to at least bring probable cause on our claim. How do we police plaintiffs who file breathtaking kinds of affidavits of wrongdoing and then it turns out to be a complete phony? What do we do about that? Well, Your Honor, I think the actions that occurred in this case is – is one manner, but I think the discovery process and how – I mean, the litigation of processes itself weeds those – weeds those – those things out. I mean, if – if there hadn't been an audio recording that gave the lie to your affidavits, I don't know how that would have been – Well, then we probably would have had a triable issue of material fact and that the California action would have continued, you know, possibly past the summary judgment stage and then the trier of fact would determine whether or not that those claims were true. Well, but they're claiming in this that your lawsuit was based in at least material part on a lie. They would like to prove that to somebody. Do they get a chance to prove that to somebody? In the Arizona action? Somewhere? Anywhere? Do they have any – do they have any basis for relief when it appears that your client lied in an affidavit? Well, I think the issue is whether there was probable cause to bring the California claim. And as the trial court said, you know, the lie was a piece of the evidence but was not the entire – Well, what's the answer to Judge Silverman's question? What's the remedy for eccentric if it's been put to a bunch of expense at least partially based on your client's lie? I think the remedy is the litigation process. And if it's shown that – So winning the lawsuit is their reward for your lie? Yes, Your Honor. But I think we need to focus on the probable cause. And the trial court noted that this one fact was not material in determining the probable cause element for the malicious prosecution claim. So if they can't establish that piece, I mean, the lie wasn't material to determining – Counsel? Yes, Your Honor. Counsel, if I could ask a question. On the inquiry, whether there's any remedy for your clients basing part of their complaint on a lie, was there any request for sanctions against your clients in the California action? Yes, Your Honor. There was numerous requests for sanctions on both sides. So that issue could have been litigated and was litigated in that court, whether there was a remedy for that. Yes, Your Honor. What were the results of the sanction motions? I don't believe any of the sanction motions were granted on either side. I see you're down to seven and a half minutes, and I believe your co-counsel has – Yes. Thank you very much, Your Honor. Thank you. Good morning. Good morning. May it please the Court. There were – Can we get your name, please? Oh, yes. Lisa Barodkin, pro per. Thank you. I'm representing myself here, as I did in the district court in Arizona, and I represented the Mowbray Parties while the case was already in progress in California. So I didn't initiate the action. But I joined it. To answer Your Honor's last question, there were two anti-SLAPP motions filed. Both were denied in the California case, and I believe they filed three Rule 11 motions, and all those sanctions motions were denied. So the remedy would be that the attorney and client would open themselves up to sanctions if they advocated a filing or a position that was unsupported by law or the facts. Ms. Barodkin, can you clarify for me when you joined the action with relation to the first complaint, second complaint, et cetera? In the California action? In the California, yes. I appeared for the first time. You were involuntarily joined in the action in Arizona. Right. Right. I joined for the first time, I believe it was April of 2010, the year it was initiated. But it was at the hearing on the anti-SLAPP motion. So at that time, there was an oral argument. Judge Wilson heard argument on the anti-SLAPP motion and denied it, and I made my first appearance. I'm trying to figure out if what you're responsible for in this case, if you will, and what you're not responsible for. So can you give me a timeline of what occurred before you joined the case? Well, I wasn't part of the case. I joined the case as counsel. Correct. Right. So the complaint was filed before you were counsel. Correct. Okay. And that complaint contained this allegation about the vulnerable. Basically, it alleged that Eccentric's business model is a racket, that they have a business model inducing fear. I understand, but I'm trying to figure out if there is malicious prosecution in this case  and what prosecution the other is. I see. I see. It's very limited. It's very limited. As Your Honors pointed out, my ‑‑ the claims against me in Arizona were dismissed on a motion to dismiss. So I was accused of wrongfully continuing the California action even after discovering that some ‑‑ Even after discovering the alleged lie. Right. Statements may have been made that were false. But you didn't ‑‑ did you ever sign a plea ‑‑ a pleading, a complaint that said there was this alleged meeting? No, Your Honor. Okay. So the only point ‑‑ What were your responsibilities after you find out that your client filed an affidavit that turns out to be false? What are your duties? Well, to investigate whether that's an accurate accusation. And the district court in California found that there were serious questions as to the authenticity or admissibility of those recordings. In fact, they were held inadmissible in that case because they were not authenticated. Weren't they withdrawn? I don't think so, no. We tried to take discovery of the vendor to sort of verify the accuracy of the claim that Eccentrics Council was making. I understood that you ‑‑ maybe I have the facts wrong. I understood that these affidavits were then taken back after the ‑‑ Oh, my client's affidavits were corrected. That's what I'm talking about. So we consulted the ethical rules in California and the California State Bar's ethics hotline and read the ethics opinions governing what an attorney is obligated to do when they discover there may have been a material misstatement. And we relied on the opinions of the California ethics office that said you can correct the statement and you can proceed and continue to litigate the case as long as you do not rely on the false statements. Right. So with respect to the other side's argument that if there's a bad piece in the complaint, even though there may be good pieces, it's malicious prosecution, I'm having a hard time figuring out why that applies to you. In other words, I think ‑‑ To you. So that's why I needed the timeline. It couldn't be. Because you ‑‑ once this was exposed or led, you ‑‑ Right. After you were in the case, the affidavits were withdrawn and you proceeded on the basis of the other issues. We corrected the affidavits. Correct, Your Honor. By Eccentrics logic, any time you discover a client has lied in a declaration, you have to immediately withdraw from the case and drop the case. And that's not the law under California law. If it were, he'd have to drop his case, too, because there's evidence in the record that his client made misstatements and had to correct his declarations. So purely this appeal is just about whether the district court got it right. The district court did. No matter what they're allowed to allege, the fact remains that the California action was based in part on the operation of Eccentric's website and on e-mail communications between the parties. Can you address ‑‑ Counsel? Yes. I was going to ask this. You've alleged or you've argued that the program itself, the business model, appeared, from your client's point of view, to be extortion-like. Okay. So what I'd like you to do is just explain, putting your client's best foot forward, why the model is like extortion if you disregard the false statement that was in that affidavit. Yes, I understand. Under the High Cite case that we cited in District Court of Arizona, and now the more recent Levitt v. Yelp case, we felt that the business model of Eccentric amounted to a scheme to induce economic fear and to profit by selling something that was a valueless sham, in the words of Levitt v. Yelp. Really, it was a protection racket. They participated actively in soliciting damaging statements and then proceeded to profit from those by offering to minimize or negate the harm that the subjects of the reports experienced in search engines. And so authority for that, as the district court found here in Arizona, was that that was a plausible legal theory, as previously found in the High Cite case. And just a brief word. We do take issue with the idea that Section 230C1 fully immunizes them because High Cite was decided under Section 230, subsection F3. I'd like to reserve 30 seconds, if I could, for my co-counsel to be heard on a motion we have pending. Unless you have more questions, I'm happy to answer those. Did you talk about the motion for sanctions? Correct, Your Honor. Why don't you say whatever you want to say about it? This will keep happening. They didn't address the substance of our argument in the appellate briefing. And normally I would take a hint from a district court judge and not move for sanctions. But the district court judge in our case said multiple times, just pointing out the reality, no matter what you do to amend the case, the fact still remains that your characterization of this claim is not what you say it was because we can just look at the record. And he already told them it was vexatious. You know, if the sanctions motion strikes me as not particularly productive from your side, on the one hand, you're arguing that probable cause is a very low standard and your initial complaint, suffice to meet it and lawyers should be given a fair amount of room to run. I tend to agree with that. But if that's true, how in the world can we impose sanctions on your opponent? It's more in the manner that it was litigated that was vexatious. They omitted material parts of the record. We then had to supplement the record to show the true nature of the complaint. But you're seeking sanctions for the trial court proceedings, correct? No. It's only for the appeal. The appeal itself, we think the result is obvious. Only for the appeal. Correct. So you think they shouldn't have filed an appeal at all? Correct. Okay. Thank you very much. Thank you, Your Honors. Mr. Gingras. A lot to cover. Judge Hurwitz, I think you asked the right question about the timeline, and I think Ms. Borodkin's answer was really misrepresentative of what happened. April 19th was the day, 2010 was the day that she appeared. It was this anti-SLAPP hearing that was denied for reasons completely unrelated. The Court found the statements weren't involving a public issue. That's why the motion was denied. She then appeared in the case. I took her client's deposition about two weeks later in early June. That's when the lie was discovered. We then immediately moved for summary judgment on that point. After I met and conferred with Ms. Borodkin, she refused to withdraw the claim. I filed a motion for summary judgment. She vigorously opposed it. The Court granted summary judgment over her objection. She then made matters worse by filing an 89-page First Amendment complaint on July 27th. This is well after she appeared in the case. Her name is on it. This is where she sets forth fraud claims, including a RICO wire fraud claim that the California judge asked her to explain, and her answer was, I can't. She could not explain any factual basis at all. Can I ask you a quick question that I think has a yes or no answer? Sure. Does the First Amendment complaint rely on the alleged lie? No, no, because that claim was summary judgment was granted before the First Amendment complaint was filed. So the extortion claim at that point was adjudicated and gone. Right. But Ms. Borodkin would not give up and kept going forward, knowing that her clients had no basis whatsoever to allege damages. Let me just read briefly from the California court's summary judgment ruling, and this is really the reason why we sued her. There is no evidence that Eccentric ever threatened to impute to plaintiffs any disgrace or to expose the secret affecting them. Plaintiffs have not presented any evidence that defendants wrote any of the negative statements or that defendants contributed in any substantive way to the negative content of these reports. That is the high-side case that she's talking about, which is a way old Arizona district court case where a motion to dismiss was denied because the plaintiff alleged that Eccentric participated in writing or soliciting false claims. The California district court in her case that she brought already found there was no evidence of any kind like that. And I would, I would. When did the tapes come to light? When did you bring the tapes to Ms. Borodkin's attention? In the deposition of her client, which was early June of 2010. And they were given to her. I personally emailed a copy of the recordings to her so that she could listen to them herself. When was that, June, June 10? It was the first week of June. I think it was June 5th of 2010. Okay. And when were the affidavits then withdrawn or corrected? About a matter of days after that. What's wrong with that? Because after the withdrawal of her client's testimony, there was no factual basis for the extortion claim, nor was there a factual basis for any of the other claims that she continued to pursue for over a year. That's basically the heart of my position. I agree. I agree that when a client, when a lawyer has no idea that his client is lying, when the client is discovered to have lied, you can't continue to rely on that lie. But you also can't continue to prosecute a claim that has no basis. And the final point I want to make is, this is highly analogous to a case that I cited called Cole v. Patricia Meyer, where a plaintiff sued a defendant for fraud and the sole basis was, well, he got sued in the past for something similar. And the Court found that was not an adequate basis for probable cause. That's basically what Ms. Barodkin's argument is. Thank you, Mr. Garre. Thank you. Counsel, thank you as well. The case just argued is submitted. Good morning.
judges: Silverman, Gould, Hurwitz